UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DILLON JAMES CALISI,

    Plaintiff,

v.                                            Case No:  6:24-cv-839-JSS-LHP

SCOTT DEESPOSITO,
UNKNOWN, MIKE CHITWOOD,
and VOLUSIA COUNTY,

    Defendants.
_____/

**ORDER**

Plaintiff, Dillon James Calisi, a prisoner proceeding pro se, sues Defendants, Volusia County, Sheriff Mike Chitwood, Lieutenant Scott DeEsposito, and unidentified officers and medical officials under 42 U.S.C. § 1983.  (Dkt. 11 at 2–3.) The court previously dismissed Plaintiff's complaint (Dkt. 1) for failure to state a claim and permitted Plaintiff to amend.  (Dkt. 8.)  The court now screens his amended complaint (Dkt. 11) for frivolity under 28 U.S.C. § 1915A.

**BACKGROUND**

Plaintiff's claims arise from an event that allegedly occurred in Unit 3, Dorm C, Cell 4, of the Volusia County Jail, where Plaintiff was in custody as a pretrial detainee. (Dkt. 11 at 4.)  Plaintiff states that at dinner time on April 19, 2020, Lieutenant DeEsposito and unidentified officers "repeatedly kicked[ and] punched" Plaintiff and "sprayed [him] with chemical agents[] while Plaintiff was already handcuffed and

obeying commands." (*Id.* at 4–5, 12.) Allegedly, when Plaintiff was later examined, an unidentified nurse informed unidentified officers that Plaintiff needed staples for a laceration on his head, but officers directed the nurse not to administer them. (*Id.* at 5, 13.) As a result of Defendants' actions, Plaintiff claims, he suffered "multiple cuts [and] abrasions and [a] severe gash to [his] head." (*Id.* at 5.) Further, he allegedly now experiences "a deteriorated mental state, trembling at the sight of law enforcement, constant paranoia, and extreme sleep deprivation," along with "migraines, blurry vision, memory loss[,] and body pains." (*Id.*) Plaintiff represents that his "traumatic experience is supported by video evidence preserved by [his] father . . . [that] clearly depicts the actions and conduct of . . . Defendants and is crucial to establishing the factual basis of [his] claims." (*Id.* at 13.)

Plaintiff purports to sue the County in individual and official capacities, sues Sheriff Chitwood in his official capacity, and sues Lieutenant DeEsposito and the unidentified officers and medical officials in their individual capacities. (*Id.* at 2–3.) Plaintiff alleges that the force used by Lieutenant DeEsposito and the unidentified officers who attacked him was "objectively unreasonable," "unjustified," "excessive," and "disproportionate to any threat or resistance posed by Plaintiff" and that it "violated established procedures." (*Id.* at 12.) Plaintiff further claims that other unidentified officers in attendance "failed to intervene when they had the . . . ability to do so" and that "unknown medical officials" failed to give Plaintiff "proper medical attention" after the attack. (*Id.* at 12–13.) As for the County and Sheriff Chitwood, Plaintiff claims that they "hir[e] and supervis[e] individuals with a propensity to

commit unlawful abuse." (*Id.* at 12; *accord id.* at 13.)  In addition, the County allegedly "breached [its] duty of care to Plaintiff by failing to take appropriate steps to train [Volusia County Department of Corrections] person[n]el to prevent unlawful abuse." (*Id.* at 12.)

Plaintiff asserts federal claims for excessive force, failure to intervene, and inadequate medical care for his injuries, in violation of his Fourth[1] and Fourteenth Amendment rights.  (*Id.* at 3, 13.)  Plaintiff also brings claims under state law for violation of his due process rights under the Florida Constitution and for assault, battery, intentional infliction of emotional distress (IIED), and negligent hiring, training, and supervision.  (*Id.*)  As relief, Plaintiff seeks "an order compelling the county attorney to present the video evidence preserved by Plaintiff's father," as well as "compensatory and punitive damages for [Plaintiff's] physical and emotional injuries." (*Id.* at 5.)  He also seeks the "costs of [this] litigation" and "declaratory and injunctive relief as necessary to prevent future violations." (*Id.*)

## APPLICABLE STANDARDS

Under 28 U.S.C. § 1915A, the court must dismiss any portion of Plaintiff's amended complaint that "is frivolous[ or] malicious, . . . fails to state a claim upon which relief may be granted[,] or . . . seeks monetary relief from a defendant who is

---

[1] Plaintiff asserts that his claim for failure to intervene to stop or prevent the use of excessive force arises under the Fourth Amendment.  However, because Plaintiff was a pretrial detainee, his claim falls under the Fourteenth Amendment.  *See Piazza v. Jefferson County*, 923 F.3d 947, 952 (11th Cir. 2019) ("While the Fourth Amendment prevents the use of excessive force during arrests and the Eighth Amendment serves as the primary source of protection against excessive force after conviction, it is the Fourteenth Amendment that protects those who exist in the in-between—pretrial detainees." (citations omitted)).

immune from such relief." 28 U.S.C. § 1915A(b). A claim is frivolous if it is "without arguable merit" either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 329 (1989). "A dismissal for failure to state a claim under the early screening provision is no different from a dismissal under Federal Rule of Civil Procedure 12(b)(6)." *Danglar v. Dep't of Corr.*, 50 F.4th 54, 55 n.1 (11th Cir. 2022) (quoting *White v. Lemma*, 947 F.3d 1373, 1376–77 (11th Cir. 2020)). Accordingly, the court "accept[s] the allegations in the amended complaint as true and construe[s] them in the light most favorable to" Plaintiff. *Id.* "To avoid dismissal for failure to state a claim, [the amended] complaint must include factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the alleged misconduct." *Waldman v. Ala. Prison Comm'r*, 871 F.3d 1283, 1289 (11th Cir. 2017). Because Plaintiff proceeds pro se, the court construes his allegations liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## ANALYSIS

The court considers Plaintiff's federal and state claims in turn.

1. **Federal Claims**

Plaintiff's federal claims for the use of excessive force, failure to intervene, and inadequate medical care arise under 42 U.S.C. § 1983. (Dkt. 11 at 3.) "[S]ection 1983 provides a method for vindicating federal rights conferred by the Constitution and federal statutes." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 997 (11th Cir. 1990). To plead a section 1983 claim, a plaintiff must allege "that the act or omission deprived [the] plaintiff of a right, privilege[,] or immunity secured by the Constitution

or laws of the United States" and "that the act or omission was done by a person acting under color of law." *Id.*

### a. Excessive Force Claim Against Lieutenant DeEsposito

The only federal claim asserted against Lieutenant DeEsposito in the amended complaint is an excessive force claim. (*See* Dkt. 11.) To state a claim of excessive force under the Fourteenth Amendment, "a pretrial detainee must show . . . that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Plaintiff alleges that Lieutenant DeEsposito used excessive force against him when Lieutenant DeEsposito "repeatedly kicked[ and] punched" Plaintiff and "sprayed [him] with chemical agents[] while Plaintiff was already handcuffed and obeying commands." (Dkt. 11 at 12.) Plaintiff further claims that Lieutenant DeEsposito "purposely and knowingly used force that was objectively unreasonable." (*Id.* at 13.) These allegations are sufficient at this stage to proceed to service of process. *See Hadley v. Gutierrez*, 526 F.3d 1324, 1330 (11th Cir. 2008) (concluding that a defendant officer's "single punch constituted excessive force" when the plaintiff "was handcuffed and not struggling or resisting"); *Vinyard v. Wilson*, 311 F.3d 1340, 1348 (11th Cir. 2002) ("[U]sing pepper spray is excessive force . . . where the crime is a minor infraction, the arrestee surrenders, is secured, and is not acting violently, and there is no threat to the officers or anyone else.").

### b. Claims Against the County and Sheriff Chitwood

Plaintiff purports to sue the County in individual and official capacities and sues

Sheriff Chitwood in his official capacity. (Dkt. 11 at 2.) However, Plaintiff cannot sue the County in an individual capacity because it is not an individual. *See Burgess v. Palm Beach County*, No. 23-cv-81265-ALTMAN, 2023 U.S. Dist. LEXIS 201489, at *5 (S.D. Fla. Nov. 9, 2023) ("Palm Beach County is a municipality and, as such, cannot be sued in its individual capacity." (internal quotation marks omitted)). Thus, the court dismisses the individual-capacity claims against the County. Moreover, an official-capacity claim against the County is likely duplicative of such a claim against Sheriff Chitwood. *See Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) ("[W]hen an officer is sued under [s]ection 1983 in his . . . official capacity, the suit is simply another way of pleading an action against an entity of which [the] officer is an agent." (footnote and quotation omitted)); *Harris v. Sumter County*, No. 5:24-cv-353-JSM-PRL, 2024 U.S. Dist. LEXIS 177865, at *1 (M.D. Fla. Sept. 30, 2024) (granting a county's motion to dismiss "because the claims against [the county] [we]re duplicative of the claims against [the sheriff] in his official capacity").

In any event, "[c]ounties and other municipal entities may be held liable under [section] 1983 only where 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Plowright v. Miami Dade County*, 102 F.4th 1358, 1370 (11th Cir. 2024) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)). Such municipal liability requires a plaintiff to make three showings: "(1) that his constitutional rights were violated[,] (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right[,] and (3) that the policy or custom caused the violation." *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th

Cir. 2004). A plaintiff can show a custom or policy in three ways: "(1) identifying an official policy[,] (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law[,] or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty.*, 48 F.4th 1222, 1229 (11th Cir. 2022).

Here, Plaintiff merely asserts in cursory fashion that Sheriff Chitwood and the County "hir[e] and supervis[e] individuals with a propensity to commit unlawful abuse" and that the County failed to train jail personnel "to prevent unlawful abuse." (Dkt. 11 at 12; *accord id.* at 13.) Such cursory assertions do not suffice to state claims for relief. *See Plowright*, 102 F.4th at 1370 (determining that a section 1983 plaintiff failed to state a claim when he "alleged in conclusory fashion"—without providing details about "past incidents"—that the county had an unconstitutional custom of shooting dogs, made the "bare assertion" that the defendant officers acted as decisionmakers for the county when they encountered the plaintiff's dog, and "alleged no facts" supporting that the county knew it needed to train or supervise its employees regarding animal encounters). Accordingly, the court dismisses the section 1983 claims against the County and Sheriff Chitwood.

### c. Claims Against the Unidentified Officers and Medical Officials

The remaining section 1983 claims must be dismissed because Plaintiff does not sufficiently identify or describe the unknown officers who allegedly joined Lieutenant DeEsposito in the use of excessive force, failed to intervene in that use of force, or

instructed the nurse not to treat Plaintiff's head wound or the unknown medical officials who allegedly provided inadequate medical care. (*See* Dkt. 11.) As the court explained in the order dismissing Plaintiff's initial complaint, (Dkt. 8 at 4), subject to "a limited exception," "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). The exception applies "when the plaintiff's description of the defendant is so specific" that using the defendant's proper name is, "at the very worst, surplusage." *Id.* (quoting *Dean v. Barber*, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992)). However, Plaintiff again provides no description of any unknown party. (*See* Dkt. 11.) Although Plaintiff believes that he will be able to ascertain the names of the unidentified parties in discovery, (Dkt. 11 at 12), that argument is insufficient. *See Vielma v. Gruler*, 808 F. App'x 872, 880 (11th Cir. 2020) ("[Eleventh Circuit] precedent has never permitted John Doe pleading solely on the ground that discovery might reveal an unnamed defendant's identity. Instead, [that] precedent has always required an unambiguous description of a defendant that enables service of process."). Accordingly, the court dismisses the federal claims against the unidentified officers and medical officials.

### 2. State Claims

Plaintiff asserts state claims for violation of his due process rights under the Florida Constitution, for battery, assault, and IIED, and for negligent hiring, supervision, and training. The court has supplemental jurisdiction over these claims under 28 U.S.C. § 1367(a) because the state and federal claims implicate the same parties and concern the same use-of-force incident and subsequent medical treatment.

*See Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 455 (11th Cir. 1996) ("In deciding whether a state . . . claim is part of the same case or controversy as a federal [claim], [the court] look[s] to whether the [state and federal] claims arise from the same facts[] or involve similar occurrences, witnesses[,] or evidence.").

Specifically, Plaintiff brings "state claims of assault, battery[,] and [IIED] against [Lieutenant] DeEsposito and unknown Defendants for the beating of Plaintiff" and "state claim[s] of negligent hiring, supervision[,] and training against the County . . . and Sheriff . . . Chitwood for hiring and supervising individuals with a propensity to commit abuse." (Dkt. 11 at 13.) The amended complaint contains but one brief mention of the Florida Constitution, (*id.* at 3), does not identify the party (or parties) against whom any Florida due process claim is asserted, and does not allege how Plaintiff's due process rights under the Florida Constitution were violated, (*see id. passim*). Accordingly, the claims brought under the Florida Constitution are dismissed. *See Dvoinik v. Rolff*, No. 23-14147, 2024 U.S. App. LEXIS 14343, at *10 (11th Cir. June 13, 2024) ("While [courts] give pro se litigants more leeway than counseled litigants, they must still . . . provide the defendants with adequate notice of the claims against them and the grounds on which the claims rest."). The court discusses in turn the claims for battery, assault, and IIED against Lieutenant DeEsposito, the claims for negligent hiring, supervision, and training against the County and Sheriff Chitwood, and the state claims against the unidentified officers and medical officials.

### a. Claims for Battery, Assault, and IIED Against Lieutenant DeEsposito

Plaintiff sues Lieutenant DeEsposito under Florida law for battery, assault, and IIED. (Dkt. 11 at 13.) Florida courts define battery as "the infliction of a harmful or offensive contact upon another with the intent to cause such contact or the apprehension that such contact is imminent." *Quilling v. Price*, 894 So. 2d 1061, 1063 (Fla. Dist. Ct. App. 2005); *accord McDonald v. Ford*, 223 So. 2d 553, 555 (Fla. Dist. Ct. App. 1969) (defining battery as "an unlawful touching or striking or the use of force against the person of another with the intention of bringing about a harmful or offensive contact or apprehension thereof" (quotation omitted)). However, in the law enforcement context, "a presumption of good faith attaches to an officer's use of force in making a lawful arrest" such that the officer is liable for battery "only where the force used is clearly excessive." *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996). Thus, a "battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances." *Id.* In fact, courts in this Circuit apply the section 1983 analysis for excessive force "to a battery claim against an officer under Florida law." *Baxter v. Santiago-Miranda*, 121 F.4th 873, 891–92 (11th Cir. 2024). Accordingly, as with Plaintiff's federal claim for the use of excessive force, Plaintiff's allegations are sufficient at this stage to proceed to service of process on Lieutenant DeEsposito for battery. *See Hadley*, 526 F.3d at 1330; *Vinyard*, 311 F.3d at 1348.

Florida courts define assault as "an intentional, unlawful offer of corporal injury to another by force, or force unlawfully directed toward another under such

- 10 -

circumstances as to create a fear of imminent peril, coupled with the apparent present ability to effectuate the attempt." *Lay v. Kremer*, 411 So. 2d 1347, 1349 (Fla. Dist. Ct. App. 1982). Because Lieutenant DeEsposito purportedly "kicked, punched[,] and sprayed" Plaintiff "repeatedly," (Dkt. 11 at 12), Plaintiff's allegations are sufficient at this stage to proceed to service of process on Lieutenant DeEsposito for assault. *See Roberts v. Burtz*, No. 8:21-cv-1935-WFJ-CPT, 2024 U.S. Dist. LEXIS 13151, at *10–11 (M.D. Fla. Jan. 25, 2024) ("Having concluded that [the plaintiff]'s excessive force claim is not subject to dismissal at this stage of the proceedings, for the same reasons, his state[-]law battery and assault claims may proceed.").

To state an IIED claim under Florida law, Plaintiff must show that "(1) the defendant's conduct was intentional or reckless[,] (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community[,] (3) the conduct caused emotional distress[,] and (4) the emotional distress was severe." *Moore v. Pederson*, 806 F.3d 1036, 1053 (11th Cir. 2015). "Although there is no definitive example of what constitutes 'outrageous conduct' for the purposes of maintaining a cause of action for [IIED]," *Golden v. Complete Holdings, Inc.*, 818 F. Supp. 1495, 1499 (M.D. Fla. 1993), "[t]he standard . . . is extremely high" such that "courts uphold claims for IIED in only extremely rare circumstances," *Paylan v. Devage*, No. 8:15-cv-1366-T-36AEP, 2019 U.S. Dist. LEXIS 232858, at *26 (M.D. Fla. Mar. 12, 2019) (quotation omitted). "[E]ven tortious or criminal intent, or intent to inflict emotional distress, standing alone, is not enough." *Moore*, 806 F.3d at 1053 (citing *Metro. Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)).

- 11 -

Neither is "conduct [that] has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Id.* (quoting *McCarson*, 467 So. 2d at 278). That said, where government authority is involved, "courts recognize that '[t]he extreme and outrageous character of the conduct may arise from an abuse by the actor of a position' and consequently 'give greater weight to the fact that the defendant[] had actual or apparent authority over [the plaintiff] as [a] police officer[].'" *Id.* at 1053–1054 (quoting *Gallogly v. Rodriguez*, 970 So. 2d 470, 472 (Fla. Dist. Ct. App. 2007)).

      Plaintiff alleges that Lieutenant DeEsposito repeatedly punched and kicked Plaintiff and sprayed him with a chemical agent even though he was handcuffed and obeying commands and that as a result, Plaintiff suffered cuts, abrasions, and a head laceration and continues to experience, among other things, mental deterioration, extreme sleep deprivation, paranoia, vision changes, migraines, pain, and memory loss. (Dkt. 11 at 5, 12.) Even in view of Lieutenant DeEsposito's position of government authority over Plaintiff, these allegations fail to state a claim for IIED. *See Hall v. Dawson*, No. 5:15cv27-WS-CJK, 2016 U.S. Dist. LEXIS 138566, at *3–8, *26 (N.D. Fla. Sept. 1, 2016) (concluding that the prisoner plaintiff failed to state a claim for IIED when the officer defendants' alleged actions included "threaten[ing] to spray [the] plaintiff with chemical agents if he refused to sign [a] form" for a cell transfer, threatening the same after the transfer if the plaintiff called officers to his cell based on his new cellmate's threats of assault, watching and laughing while the cellmate assaulted the plaintiff and then actually "spray[ing] [the plaintiff] with chemical agents

- 12 -

without warning, cause, or reason," "threaten[ing] to spray [the] plaintiff with chemical agents if he reported" these events, and fabricating disciplinary reports against the plaintiff (internal quotation marks omitted)), *report and recommendation adopted by* 2016 U.S. Dist. LEXIS 138546, at *1 (N.D. Fla. Oct. 5, 2016); *see also Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1336, 1339 (S.D. Fla. 2012) (concluding that the cruise-passenger plaintiff failed to state a claim for IIED when cruise-ship employees allegedly "grabbed her, . . . kicked and punched her, threw her to the ground multiple times, handcuffed her in a harmful manner, dragged her across the floor while she was handcuffed, . . . confined her to her cabin by placing a crew member immediately outside of her cabin door[,] . . . prevent[ed] her from otherwise leaving her cabin until the following day," and "destroyed a camera [her] travel companion had used to document" these events (internal quotation marks omitted)). Thus, the court dismisses the IIED claim against Lieutenant DeEsposito.

### b. Claims for Negligent Hiring, Supervision, and Training Against the County and Sheriff Chitwood

Plaintiff sues the County and Sheriff Chitwood under Florida law for negligent hiring, supervision,[2] and training. (Dkt. 11 at 13.) Claims of negligent hiring and supervision "permit an injured plaintiff to recover damages against an employer for acts of an employee committed outside the scope and course of employment." *Magill*

---

[2] Negligent supervision is also called negligent retention. *See Malicki v. Doe*, 814 So. 2d 347, 362 n.15 (Fla. 2002) (explaining that "[t]he primary distinction between a claim for negligent hiring and a claim for *negligent supervision or retention* concerns the time at which the employer is charged with knowledge of the employee's unfitness" (emphasis added)).

*v. Bartlett Towing, Inc.*, 35 So. 3d 1017, 1020 (Fla. Dist. Ct. App. 2010). "[A]n employer can be held responsible for an employee's willful torts if the employer knew or should have known that the employee was a threat to others." *Id.* The Fifth District Court of Appeal explains:

> Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness. In negligent hiring cases, a primary focus is whether the employer conducted an adequate pre-employment investigation into the prospective employee's background.
>
> Negligent [supervision] occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action, such as investigation, discharge, or reassignment.

*Id.* n.1.

To state a claim for negligent hiring or supervision, a plaintiff must first demonstrate "the existence of a duty owed to the person injured by the person charged with negligence"—that is, "[t]he plaintiff must demonstrate that he is within the zone of risks that are reasonably foreseeable by the defendant." *Garcia*, 492 So. 2d at 439. To show that the defendant breached that duty, a negligent-hiring plaintiff must plead

> facts sufficient to show that (1) the employer was required to make an appropriate investigation of the employee and failed to do so[,] (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general[,] and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known.

*Id.* at 440. A negligent-supervision plaintiff must allege that something "occurred

subsequent to hiring the employee that would have placed the employer on actual or constructive notice of the employee's dangerous character," *id.* at 442–43 (internal quotation marks omitted), and "the employer fail[ed] to take further action such as investigating, discharge, or reassignment," *id.* at 438–39. Further, claims of negligent hiring and supervision require the plaintiff to allege that the breach caused him damage. *Spadaro v. City of Miramar*, 855 F. Supp. 2d 1317, 1338 (S.D. Fla. 2012).

Plaintiff does not satisfy these standards. For example, the amended complaint contains no allegation that the County or Sheriff Chitwood conducted or failed to conduct a pre-employment investigation of Lieutenant DeEsposito or the unidentified officers or medical officials, that any investigation conducted was unreasonably deficient, or that any investigation would have uncovered facts about these individuals that would lead the County or Sheriff Chitwood to believe that the individuals were dangerous or posed a risk to prisoners at the Volusia County Jail. (*See* Dkt. 11.) Nor does the amended complaint allege facts showing that post-hiring conduct by Lieutenant DeEsposito or the unidentified individuals placed the County or Sheriff Chitwood on notice that these individuals were dangerous or posed a risk to prisoners at the Volusia County Jail. (*See id.*) Therefore, the court dismisses Plaintiff's claims for negligent hiring and negligent supervision.

"Negligent training occurs when an employer 'was negligent in the implementation or operation of the training program.'" *Gutman v. Quest Diagnostics Clinical Lab'ys, Inc.*, 707 F. Supp. 2d 1327, 1331 n.4 (S.D. Fla. 2010) (quoting *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005)). "[T]he conventional elements

of duty, breach, causation, and damages must be shown in negligent[-]training claims." *Wynn v. City of Lakeland*, 727 F. Supp. 2d 1309, 1316 (M.D. Fla. 2010) (citing *Watson v. City of Hialeah*, 552 So.2d 1146, 1149 (Fla. Dist. Ct. App. 1989)).

As with the claims for negligent hiring and supervision, the amended complaint fails to plead facts satisfying the negligence standard. The pleading states in vague and conclusory fashion that the County and Sheriff Chitwood "hir[e] and supervis[e] individuals with a propensity to commit unlawful abuse" and that the County "breached [its] duty of care to Plaintiff by failing to take appropriate steps to train [Volusia County Department of Corrections] person[n]el to prevent unlawful abuse." (Dkt. 11 at 12; *accord id.* at 13 (bringing "state claim[s] of negligent hiring, supervision[,] and training against the County . . . and Sheriff . . . Chitwood for hiring and supervising individuals with a propensity to commit abuse").) However, the amended complaint does not plead facts showing that the County or Sheriff Chitwood knew or should have known that further training of Lieutenant DeEsposito or the unidentified individuals was required, does not discuss the type or content of any training provided to these individuals or of the training Plaintiff believes should have been provided, does not state the steps Plaintiff believes were necessary to implement the unspecified training, and does not allege that the failure to provide any such training was unreasonable. (*See id. passim*.) Therefore, the claims for negligent training are dismissed.

### c. State Claims Against the Unidentified Officers and Medical Officials

Although state law governs the substantive issues, the court applies federal law

for procedural issues when exercising supplemental jurisdiction over a state claim. *See McDowell v. Brown*, 392 F.3d 1283, 1294 (11th Cir. 2004) ("Because the district court exercised supplemental jurisdiction over these claims . . . , state law governs substantive issues and federal law governs procedural issues."). The prohibition on fictitious-party pleading is procedural. *See Adams v. Franklin*, 111 F. Supp. 2d 1255, 1259 n.3 (M.D. Ala. 2000) ("[F]ictitious[-]party practice is not authorized by either the Federal Rules of Civil Procedure or any federal statute."); *Meade v. Prison Health Servs., Inc.*, No. 94-854-CIV-T-17-B, 1994 U.S. Dist. LEXIS 16533, at *11 (M.D. Fla. Nov. 10, 1994) ("There is no provision in the Federal Rules of Civil Procedure for fictitious[-]party pleading, and thus the practice is prohibited."). Accordingly, the court dismisses Plaintiff's state claims against the unidentified officers and medical officials.

## CONCLUSION

Accordingly:

1. This case will proceed to service of process of the amended complaint (Dkt. 11) on Lieutenant DeEsposito on the individual-capacity section 1983 claim for the use of excessive force and on the state claims for battery and assault.

2. The remaining claims in the amended complaint (Dkt. 11) are **DISMISSED without prejudice** for failure to state a claim.

3. Plaintiff must complete the following forms, using the following instructions, in order to serve Lieutenant DeEsposito:

a. **Notice of a Lawsuit and Request to Waive Service of a Summons**

   i. Plaintiff must write his name, the defendant's name, and the case number in the designated spaces on the top of the Notice of a Lawsuit and Request to Waive Service of a Summons Form.
   ii. Plaintiff shall fill in <u>30 days</u> as the number of days allowed to answer.
   iii. PLAINTIFF MUST SIGN THE NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS FORM.
   iv. Plaintiff should <u>not</u> fill in the date in the line following the sentence that reads: "I certify that this request is being sent to you on the date below."

b. **Waiver of the Service of Summons**

   i. Plaintiff shall write his name, the defendant's name, and the case number in the designated spaces on the top of the form.
   ii. PLAINTIFF SHOULD NOT COMPLETE OR SIGN ANY OF THE BLANKS AFTER THE SENTENCE STATING: "If I fail to do so, a default judgment will be entered against me or the entity I represent."

c. **Marshal's form (Form 285)**

   i. Plaintiff is required to fill in his name and address and the name and address of Lieutenant DeEsposito in the appropriate spaces on the Marshal's form.
   ii. PLAINTIFF MUST SIGN THE 285 FORM.

d. Plaintiff shall mail the original completed forms and a photocopy of each of the completed forms, along with two identical copies of his amended complaint (Dkt. 11), to the Clerk's Office within **THIRTY (30) DAYS** of the date of this order.

    e. **Plaintiff's failure to timely return the completed forms and copies will result in dismissal of this case without prejudice for failure to prosecute, without further notice**.

4. The Clerk of Court is **DIRECTED** to send Petitioner two copies of each service-related form described above and to terminate as Defendants on the docket the County, Sheriff Chitwood, and the unknown parties.

**ORDERED** in Orlando, Florida, on December 20, 2024.

JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Unrepresented Parties